625 A.2d 1283

**WEYERHAEUSER COMPANY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (BURNS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 4, 1993.

Decided May 7, 1993.

Reargument Denied June 28, 1993.

Roy F. Walter, Jr. for petitioner.

Joseph H. Chivers, for respondent.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

Before us is an appeal by Weyerhaeuser Company (employer) from an order of the Workmen's Compensation Appeal

Board (board) reversing the referee's decision and reinstating the benefits of Richard Burns (claimant) pursuant to The Pennsylvania Workmen's Compensation Act.[1]

On March 29, 1988, claimant sustained an injury to his right foot arising out of and in the course of his employment with employer. A notice of compensation payable was issued on April 21, 1988.[2] Claimant returned to work on January 11, 1989.

On February 1, 1989, a supplemental agreement was entered into by the parties.[3] This agreement indicated that claimant's work-related injury resolved itself into loss of use of the fourth and fifth toes on the right foot due to amputation.

Subsequently, on or about June 9, 1989, claimant filed a reinstatement petition alleging that the work-related injury of March 29, 1988 had resolved itself into the permanent loss of use of his entire right foot for all practical intents and purposes.

Claimant continued to work for employer uninterrupted until April 25, 1991, when he was laid off due to the closing of employer's plant for economic reasons. Claimant then modified his petition alleging that he was entitled to a reinstatement of his benefits as of April 25, 1991, the date employer's plant closed.

Following several hearings, the referee issued the following relevant findings of fact and conclusions of law:

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

2. Employer directs our attention to a second notice of compensation dated July 25, 1988, which contains a notation to disregard the earlier notice dated April 21, 1988. Reproduced Record (R.) at 2a. The second notice adds language limiting the number of weeks claimant was to receive benefits to thirty-two weeks.

3. It is employer's contention that the language in the supplemental agreement, R. at 3a, is incorrect in a material respect, to the extent that it states compensation is suspended, given the statutory definition of specific loss, and because the second notice of compensation payable recognizes that only benefits of a limited duration were due claimant. The supplemental agreement merely sought to end employer's liability in a more formalized fashion. Despite that effort, incorrect terminology was used.

1. The claimant, Richard A. Burns, filed a Reinstatement Petition on or about June 9, 1989 averring that the work-related injury of March 29, 1988 had resolved itself into the permanent loss of use of his right foot for all practical intents and purposes.

2. The defendant filed a timely Answer denying the allegations of the petition and averring that the claimant's injury was confined to the loss of use of the fourth and fifth toes. When the claimant returned to work, he performed his regular job as a debarker and he continued working in that vigorous position until the plant was closed on April 25, 1991. The claimant therefore took the position that he would be automatically entitled to a reinstatement of worker's compensation benefits as he was under the Supplemental Agreement suspension status as set forth in the February 1, 1989 Supplemental Agreement.

3. Based upon the competent and credible testimony offered by the deposition of Dr. William Mitchell, M.D., it is found as a matter of fact that the claimant did sustain a specific loss of use for all practical intents and purposes only with respect to the fourth and fifth toes of the right foot and not to the right foot as a whole. Before making this finding, the deposition testimony of Dr. Eric Minde was taken into consideration; however, the testimony and opinions of Dr. Mitchell are found to be more credible on this issue.

## CONCLUSIONS OF LAW

3. The claimant's worker's compensation benefits are suspended as of April 26, 1991, the date which the employer's plant shut down. When claimant returned to work after the injury, he returned to his regular job as a debarker without any specific physical limitations imposed upon his job as a result of the work-related injury. The claimant did not sustain a loss in earning power as a result of the work related disability, but in fact, sustained a loss of earnings due to the plant closing, which is independent of the worker's compensation benefits established by the industrial injury. *See Pieper v. Ametek–Thetek–Thermox Instru-*

*ments Division and W.C.A.B.* [526 Pa. 25] 584 A.2d 301, Pa. (1990).

The board affirmed the decision of the referee as to his finding that claimant did not lose the use of his right foot for all practical intents and purposes. In addition, the board assumed that claimant's status at the time of the plant closing was that of suspension. Therefore, the mere fact that employer's plant closed for economic reasons was sufficient to compel reinstatement of total disability benefits. Accordingly, compensation was awarded to claimant effective April 26, 1991.[4]

On appeal, employer contends that (1) claimant's original work-related injury was limited to the permanent loss of the fourth and fifth toes of the the right foot for all practical intents and purposes. As to that injury, claimant was properly compensated and pursuant to section 306(c) of the Act,[5] the employer bears no further liability to claimant for additional benefits; (2) the supplemental agreement, dated February 1, 1989, is incorrect in a material respect as the status between the parties was not that of a suspension. Accordingly, that document should be construed to reflect only liability for the specific loss injuries; (3) whether or not claimant was under the benefits of a suspension status at the time he was laid off, he has not sustained his burden of proof under *Pieper v. Ametek–Thermox Instruments,* 526 Pa. 25, 584 A.2d 301 (1990). Therefore, the board erred as a matter of law in reversing the referee's order and reinstating total disability benefits based upon claimant's layoff status.

The dispute in this case appears to arise out of confusion over the distinction between earnings loss benefits (for total or partial disability) and specific loss benefits.

4. On appeal, the standard of review of a board order is limited to determining whether there has been a constitutional violation, or an error of law, or a violation of board procedure, and whether the necessary findings of fact are supported by substantial evidence. *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass),* 515 Pa. 315, 528 A.2d 580 (1987).

5. 77 P.S. § 513.

■ Section 306(c) of the Act[6] defines the categories of specific loss and disfigurement. Compensation for specific losses is paid without regard to loss of earning power and is paid even if the claimant loses no time from work. *See Lente v. Luci*, 275 Pa. 217, 119 A. 132 (1922).

■ Furthermore, section 306(c) of the Act provides the exclusive remedy for loss of body members or the loss of use thereof caused by work-related injuries. *Mathies Coal Co. v. Workmen's Compensation Appeal Board (Henry)*, 114 Pa.Commonwealth Ct. 11, 538 A.2d 590 (1988).

■ Ordinarily, a claimant whose injury is compensable as a specific loss is not entitled to additional compensation even if totally disabled by his/her permanent injury, unless an injury to another part of the body is found to be the direct result of the claimant's permanent injury and causes a disability separate and distinct from that which normally follows the specific loss injury. *Jessop Steel Co. v. Workmen's Compensation Appeal Board (Mosier)*, 121 Pa.Commonwealth Ct. 493, 551 A.2d 337 (1988). In the present matter, the referee stated in his third finding of fact that claimant did sustain a specific loss with respect to the fourth and fifth toes of his right foot, but not to the right foot as a whole. A review of the record reveals that claimant has received all the compensation he was entitled to as the result of his specific loss.[7]

■ In its opinion, the board relied on *USX Corp. v. Workmen's Compensation Appeal Board (Guthrie)*, 132 Pa.Commonwealth Ct. 54, 571 A.2d 1112 (1990), as supporting authority for its determination that the referee erred in dismissing claimant's reinstatement petition where claimant was laid off for economic reasons when he was presumably on suspension status. We find the board's reliance on *Guthrie* misplaced at the outset because the claimant herein received

6. 77 P.S. § 513.

7. A second supplemental agreement was entered into on May 25, 1990, for the sole purpose of providing claimant an additional six weeks of compensation to allow for a healing period subsequent to a second surgery. R. at 194a.

compensation for a specific loss injury, whereas in *Guthrie*, the claimant received compensation pursuant to a disabling compensable back injury. The record in the present case contains no evidence to indicate that claimant's specific loss resolved into a total or partial disabling injury.

We conclude, therefore, that in light of the statutory requirements in cases of this kind and the existing factual background, the insertion of the word suspension in the first supplemental agreement was materially incorrect and of no legal effect.

Accordingly, we reverse the order of the board and reinstate that part of the referee's decision dismissing claimant's reinstatement petition.[8]

DOYLE, Judge, dissenting.

I respectfully dissent.

The dispute in this case does not arise out of the confusion over the distinction between earning-loss benefits (for total or partial disability) and specific-loss benefits (majority p. 1285); the "confusion" arises over the clear distinction between what the parties agreed upon in the supplemental agreement, namely, a suspension, and what the majority has made that into, a termination.

The referee specifically found (finding 3), that the "claimant returned to work under the supplemental agreement with a partial disability of an undetermined amount. Therefore, compensation was suspended." This finding was made *in addition to* a finding that specific loss benefits were made for the claimant's loss of his fourth and fifth toes. The Board did not "assume" the claimant's status at the time of the plant closing as the majority would have it (p. 1284); the Board merely accepted what the referee found and the parties had agreed upon. Accordingly, I would affirm the Board.

---

**8.** Given our disposition of employer's initial argument, we need not address the second argument presented for our review.

## ORDER

NOW, this 7th day of May, 1993, the order of the Workmen's Compensation Appeal Board, dated March 20, 1992, at No. A91–1739, is hereby reversed, and that part of the referee's order that denied reinstatement of total disability of benefits to claimant is reinstated.